NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

P*I*E NATIONWIDE, INC., Respondent.

No. 88–2911.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1989.

Decided Jan. 30, 1990.

Aileen A. Armstrong, John D. Burgoyne (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., Joseph A. Szabo, Director, N.L.R.B., Milwaukee, Wis., for petitioner.

Peter R. Corbin (argued), John E. Duvall, Corbin & Dickinson, Jacksonville, Fla., John P. Jones, Clearwater, Fla., for respondent.

Before POSNER, COFFEY, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The National Labor Relations Board has petitioned us to enforce its order; the employer resists on the ground that enforcement would be inequitable. To frame the issue we must sketch the system for the enforcement of unfair labor practice orders.

A remedial order issued by the Labor Board is not self-executing. The respondent can violate it with impunity until a court of appeals issues an order enforcing it. *Olin Industries, Inc. v. NLRB*, 72 F.Supp. 225, 229 (D.Mass.1947). Once the order is enforced, violations of it expose the violator to proceedings for contempt in the court of appeals. 29 U.S.C. §§ 160(e), (f); *NLRB v. Brooke Industries Inc.*, 867 F.2d 434, 435 (7th Cir.1989) (in chambers). Usually these are proceedings for civil contempt. *Hoffman v. Beer Drivers & Salesmen's Local Union*, 536 F.2d 1268, 1273 (9th Cir.1976); *NLRB v. Reed & Prince Mfg. Co.*, 130 F.2d 765, 771 (1st Cir.1942). But there is no reason why they must always be of that character. 18 U.S.C. § 401(3).

Suppose an employer fires one of its employees for engaging in concerted activity. The order that the Board will issue to remedy this unfair labor practice will have at least two parts. The first part will direct the employer to reinstate the employee with back pay, and to post notices of this in the workplace, normally for 60 days, NLRB Case Handling Manual, pt. 1, ¶ 10132.1a (June 1989), to reassure the other workers that the Board is making efforts to protect their rights. The second part of the order will direct the employer to cease and desist from the kind of unlawful behavior that the Board has found—in our hypothetical case, retaliation against an employee for exercising his statutory right to engage in concerted activity. The company is to stop doing the unlawful practice and to refrain from repeating it in the future.

After the Board issues a remedial order, the employer has a period of time within which to petition for review of the order in a court of appeals. 29 U.S.C. § 160(f). If such a petition is filed, it is the Board's practice to file a cross-petition for enforcement of its order under § 160(e), and the cross-petition is routinely granted if the petition for review is denied, that is, if the court of appeals upholds the Board's order. If a petition for review is not filed, the case is referred to the Board's staff to work out the details of compliance. Most of the time they are worked out satisfactorily, the requisite notices are posted, and the employee is reinstated with back pay, rendering the first part of the order moot after the 60-day period of required notices has run. But the second part of the order, the cease and desist part, is not made moot by the employer's abandonment, which may be temporary, of the unlawful activity. *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950); *NLRB v. Raytheon Co.*, 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 305 n. 14, 106 S.Ct. 1066, 1075 n. 14, 89 L.Ed.2d 232 (1986); 29 C.F.R. § 101.13(b) (1989). Unless the employer is a repeat violator of the National Labor Relations Act, however, the Board's practice is not to seek judicial enforcement of its order if the employer complies with the first part. (The Board used to seek enforcement routinely—and was criticized for doing so. H.R.Rep. No. 245, 80th Cong., 1st Sess. 43 (1947).) As a result, in relatively few cases does the Board seek enforcement of its order other than by cross-motion when the respondent has petitioned for review; this is such a case, however.

In 1983, P*I*E Nationwide, Inc., a trucking concern, fired Patrick Clement, one of its drivers, after learning that another trucking company had previously reinstated him pursuant to a settlement of unfair labor practice charges that the Regional Director of the NLRB (a subordinate of the General Counsel, the independent prosecuting arm of the Board) had filed on Clement's behalf. Clement complained anew and the Regional Director filed unfair labor practice charges against P*I*E accusing it of having fired Clement in order to discourage employees from resorting to the Board's processes. Concluding that P*I*E had indeed committed an unfair labor practice in firing Clement, the Board on February 5, 1987, ordered the company to reinstate him, to notify the company's other employees of this, and to cease and desist both from the specific unfair labor practices found and from violating its employees' rights under the National Labor Relations

Act "in any like or related manner" in the future. This is the order the Board now asks us to enforce—and not for the first time. Contrary to its usual practice—perhaps anticipating what was to come—the Board petitioned this court in March 1987 to enforce the order, which had been entered the month before. While the petition was pending, however, the company signed a stipulation with the Board which provided that (1) the company would reinstate Clement; (2) the company reserved the right to a hearing on the amount of back pay due him; (3) in all other respects the company waived its right under the judicial-review provisions of the National Labor Relations Act "to contest either the propriety of the Board's Order issued on February 5, 1987, or the findings of fact and conclusions of law underlying that Order." On the basis of this stipulation the Board asked us to withdraw the petition for enforcement "without prejudice," and we did so. The company did not ask us to make the withdrawal with prejudice, as it could have done. Fed.R.App.P. 1(a), 42(b). So the Board was free to refile.

The following April (1988), a hearing on the amount of back pay due Clement was held before one of the Board's administrative law judges, who awarded Clement almost $78,000 in back pay, plus some pension benefits. The company has appealed that decision to the Board. On June 18, P*I*E fired Clement again, and on August 5 the Board's Regional Director issued a complaint charging that P*I*E had again committed an unfair labor practice. In October an administrative law judge upheld the charge. The company's appeal from that decision is before the Board along with the company's appeal from the specification of back pay, mentioned above.

■ The filing of the complaint against P*I*E by the Regional Director on August 5 touched off two additional actions by the Board. First, on October 3, 1988, the Board filed in this court its second petition (the one before us now) to enforce the order of February 5, 1987. Second, the Board brought suit in federal district court for an injunction under section 10(j) of the

National Labor Relations Act, as amended, 29 U.S.C. § 160(j), directing the company to reinstate Clement and cease making retaliatory discharges. The district court issued the injunction but this court reversed because not all the requirements for such an injunction had been met. *Szabo v. P*I*E Nationwide, Inc.*, 878 F.2d 207 (7th Cir. 1989). Section 10(j) authorizes the issuance of an injunction *before* the Labor Board has adjudicated the unfair labor practice complaint, that is, a preliminary injunction. We ruled recently that traditional equity principles are applicable to suits under section 10(j). *Kinney v. Pioneer Press*, 881 F.2d 485 (7th Cir.1989). This implies, and *Kinney* expressly holds, *id.* at 494, that the Board must show irreparable harm in such a suit, for that is a traditional prerequisite to a preliminary injunction. This is not the focus of the *Kinney* opinion, and there is contrary authority: *United Auto Workers v. NLRB*, 449 F.2d 1046, 1051 (D.C.Cir. 1971) (per curiam), for example, holds that section 10(j) does not require proof of irreparable harm. We need not worry the question further in this opinion, because it is largely, perhaps entirely, semantic. Cf. *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 903 (7th Cir.1989). Section 10(j) directs the court to grant such relief "as it deems just and proper," and it is not just or proper to enjoin a company in advance of trial if the injunction is unnecessary to ward off any harm to anybody. The legislative history of section 10(j) reveals—what is anyway obvious—that the purpose of the statute was to prevent substantial injury being done by unfair labor practices while Board proceedings were making their stately progress to conclusion. S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947). No such injury was shown in *Szabo v. P*I*E Nationwide, Inc.* The Board failed to show that P*I*E's second termination of Clement was likely to discourage other workers from filing claims of retaliatory discharge—the only type of harm that would not be cured by the Board's eventual issuance of a remedial order.

■ Neither party bothered to cite *Szabo v. P*I*E Nationwide, Inc.* to us—a curious omission, but also a tacit acknowledg-

ment that the standard for a section 10(j) injunction is more demanding than that governing a petition to enforce such an order under section 10(e), once the order is entered. Therefore the result of that case does not compel us to refuse enforcement of the Board's order.

■ In opposing judicial enforcement of the Board's order of February 5, 1987, the company does not argue that its compliance with the order's notice, reinstatement, and (conditional on its right to a hearing) back pay provisions made the order moot in a technical sense. How could it? The order also directed the company to cease and desist from violating the National Labor Relations Act in a manner similar to the violations that the Board had found in its February 5th order. If a cease and desist order became moot by virtue of the respondent's discontinuing the specific illegalities that gave rise to the order, such orders would have no force at all—the respondent would comply for a day, declare the order moot, and resume its violations with impunity. That is approximately what happened here. The company reinstated Clement, then (albeit allowing more than one day to elapse) fired him again, and an administrative law judge has found that it fired him for the same reason that caused the Board in its previous decision to find unfair labor practices.

■ P*I*E argues not that the order of the February 5th is moot, but that it is inequitable for the Board to seek enforcement of the order while the Board has an independent unfair labor practice case in progress against the company arising out of similar or related facts. We agree with P*I*E that a court of appeals may, indeed must, take into account equitable considerations in deciding whether to enforce an order of the Labor Board. We also agree that the waiver contained in the stipulation that led to the withdrawal of the Board's first petition to enforce its order does not bar P*I*E from arguing to us that enforcement would be inequitable. The stipulation waives P*I*E's right "to contest either the propriety of the Board's Order ... or the findings of fact and conclusions of law

underlying that Order," that is, its right to challenge the validity of the order as unsupported by substantial evidence or as contrary to the National Labor Relations Act. The stipulation does not waive the company's right to argue to us that even though the order is valid, it would be inequitable to place the power of a court behind it.

Some background is necessary to explain why petitions for enforcement of Labor Board orders are subject to equitable defenses and to delimit the scope of the principle. What now seems the curious impotence of unenforced orders of the Board is the result of a decision by the Congress that enacted the Wagner Act to give the Board it was creating the same procedures as the Federal Trade Commission then had. S.Rep. No. 573, 74th Cong., 1st Sess. 14 (1935); H.R.Rep. No. 969, 74th Cong., 1st Sess. 21 (1935). In the case of both agencies, the denial of teeth to the agency's orders was a swap for procedural informality. Hearings before S.Comm. on Education & Labor, 73d Cong., 2d Sess., pt. 1, at 36–37 (1934) (statement of Milton Handler). When the Administrative Procedure Act came along and regularized administrative cease and desist proceedings, the deal was shattered. Eventually the FTC was able to persuade Congress to make its orders self-executing: once the respondent's appellate remedies are exhausted, violation of the Commission's order is punishable by civil-penalty proceedings in federal district court, proceedings that are the equivalent of contempt proceedings but more expedient because administered in the district court rather than in the court of appeals. Federal Trade Commission Act, § 5(l), 15 U.S.C. § 45(l).

■ Distrust of the Labor Board, or perhaps disagreement with the laws it administers or the substantive positions it takes—or perhaps sheer inertia—has prevented Congress from making the Board's orders self-executing, even though the Board's unfair labor practice proceedings are subject to the same requirements of the Administrative Procedure Act as the Trade Commission's cease and desist proceedings.

*International Tel. & Tel. Corp. v. Local 134, IBEW*, 419 U.S. 428, 445, 95 S.Ct. 600, 610, 42 L.Ed.2d 558 (1975). The Board unlike the Commission still must go to a court of appeals and ask that court to issue an order enforcing the Board's order. The order issued by the court is an injunction, enforceable by contempt. The issuance of an injunction is the exercise of an equitable power, and is subject to the equitable constraints that have evolved over centuries in recognition of the heavy costs that injunctions can impose (including costs to innocent third parties) and the potential severities of contempt. The statutory scheme interposes a court between the Board and the respondent, empowering the Board to seek the aid of equity but not disabling the equity court from exercising a complementary power of equitable restraint and forbearance. *Continental Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1095 (7th Cir.1984); *NLRB v. Greensboro News & Record, Inc.*, 843 F.2d 795, 798 (4th Cir.1988); *C–B Buick, Inc. v. NLRB*, 506 F.2d 1086, 1092 (3d Cir.1974). The principles of equitable jurisprudence are not suspended merely because a government agency is the plaintiff. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542–45, 107 S.Ct. 1396, 1407–10, 94 L.Ed.2d 542 (1987).

▌ The juxtaposition of "equity" and "labor" may seem a throwback to the era of the labor injunction, an era that Congress brought to an end by enacting the Norris–LaGuardia and Wagner Acts. But in pointing out that a court of appeals asked to enforce an order of the Labor Board has an equitable discretion, we do not mean to suggest that the court is entitled to substitute its conception of equitable labor relations for that of Congress and the Board. The court must take as given the value choices embodied in the statutes and policies administered by the Board, but is entitled and in fact required to consider whether the enforcement of the Board's order would violate equitable principles that are neutral with regard to those value choices.

▌ A further qualification to our assertion of an equity power in this case— and a different point from the paramount authority of Congress and the Labor Board in the formulation of labor policy—is that a modern federal equity judge does not have the limitless discretion of a medieval Lord Chancellor to grant or withhold a remedy. *Whitcomb v. Chavis*, 403 U.S. 124, 161, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971); *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1245 (7th Cir.1989); *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 863 (2d Cir.1985), and cases cited there. Modern equity has rules and standards, just like law, *Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 939 (7th Cir.1984) (concurring opinion), except that the ratio of rules to standards is lower in equity than in law. We cannot refuse to enforce an order of the Labor Board because we may think it an unwise use of the Board's limited resources to have two proceedings going against P\*I\*E at the same time, or because we may think that the Board should not have withdrawn its original petition for enforcement.

▌ A proper ground for refusing to issue the injunction would be harmful and unjustifiable delay. On this ground we and other courts have sometimes refused to enforce bargaining orders entered by the Board, when the request for enforcement came so late that there was substantial doubt that the union with which the employer had been ordered to bargain still had the support of a majority of the workers. *Continental Web Press, Inc. v. NLRB, supra; Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 613 (7th Cir.1983) (en banc); *NLRB v. Connecticut Foundry Co.*, 688 F.2d 871, 888 (2d Cir.1982). In *Continental Web* we called the delay "laches," speaking it may seem with imprecision, since the term is normally confined to delay in the commencement of a proceeding rather than in the enforcement of the order entered at its conclusion—though in one sense the enforcement proceeding in the court of appeals is the relevant proceeding. The name is not important. Nor the fact that the

Supreme Court used to say that laches was not a defense to a suit by the United States. *United States v. Beebe*, 127 U.S. 338, 344, 8 S.Ct. 1083, 1086, 32 L.Ed. 121 (1888). Following dictum in *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402 (1977), and the general principle noted earlier that government suits in equity are subject to the principles of equity, laches is generally and we think correctly assumed to be applicable to suits by government agencies as well as by private parties. *EEOC v. Vucitech*, 842 F.2d 936, 942 (7th Cir.1988). Nor must the harm to the defendant take the form of impairment of his ability to mount a good defense. *Id.* at 942. But harm there must be. Mere delay is not enough to show laches. *Gardner v. Panama R.R.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951) (per curiam). And all relevant harms must be considered, not just the harm to the defendant. It was on this basis that the Supreme Court in *NLRB v. Ironworkers Local 480*, 466 U.S. 720, 104 S.Ct. 2081, 80 L.Ed.2d 715 (1984) (per curiam), refused to recognize a defense of unreasonable delay to a back pay order: the effect of upholding the defense would have been to deprive innocent persons—the workers—of money to which they were entitled, merely because the Board had blundered.

Enough on the mysteries of laches. The delay was not unreasonable here, and there was no harm. It was not unreasonable for the Board to wait until it had reason to believe that the company was a repeat violator of the National Labor Relations Act before seeking to obtain a form of order that would enable it to proceed subsequently against P\*I\*E with the aid of this court's contempt power. There was no harm because if the Board had acted sooner, and obtained court enforcement of its order before P\*I\*E fired Clement for the second time in June 1988, the Board could have proceeded against P\*I\*E along the contempt route, and if it had done that P\*I\*E would be worse off than it is.

■ Another equitable defense that might be but it is not available to the employer here is that the plaintiff is trying to harass the defendant by suing him redundantly. *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 571 (7th Cir.1989). But it is P\*I\*E that wants the Board to proceed in a piecemeal, redundant fashion by filing a separate unfair labor practice complaint every time it fires Patrick Clement. By obtaining an order enforceable by an action for contempt, the Board will streamline, probably obviate—rather than multiply—future proceedings against the company.

■ We can think of no other equitable defense that might be applicable in the circumstances of this case to the Board's petition for enforcement. It is not an equitable (or any other type of) defense that an administrative agency may not be making the best use of its resources. The courts neither are the managers of the administrative agencies nor are empowered to correct their managerial mistakes. *Kinney v. Pioneer Press, supra*, 881 F.2d at 493; *Rockford League of Women Voters v. Nuclear Regulatory Comm'n*, 679 F.2d 1218, 1222 (7th Cir.1982); *Massachusetts Public Interest Research Group, Inc. v. Nuclear Regulatory Comm'n*, 852 F.2d 9, 19 (1st Cir.1988); cf. *United States v. Schwartz*, 787 F.2d 257, 266 (7th Cir.1986); *United States v. Podolsky*, 798 F.2d 177, 179 (7th Cir.1986); *United States v. Miller*, 891 F.2d 1265, 1271 (7th Cir.1989) (concurring opinion). We doubt there *was* a managerial mistake here. The Board economizes on its resources (and those of respondents and of the courts of appeals) by *not* routinely seeking judicial enforcement of its orders. The vast majority are voluntarily complied with, and there is no need to drag in the courts. The order that the Board asks us to enforce is one of 10,122 entered in 1987. Fifty–Second NLRB Ann. Rep., 1987, at p. 197 (1989) (tab. 4). Petitions for review were filed in only 108 of these cases, leaving 10,014 in which the Board could have filed a petition for enforcement in a court of appeals. But because the Board's practice is to seek enforcement only when it doubts whether the company will comply voluntarily, in only 228 of those 10,014 cases—2.3 percent—did the Board file a petition for enforcement.

P*I*E's action in firing Clement a second time in circumstances redolent of hostility to unions gave the Board reason to believe that the company was not complying fully with the February 5th order and should be placed under the additional constraints of a judicial order enforceable by contempt.

A dictum in *NLRB v. Greensboro News & Record, Inc.*, 843 F.2d 795 (4th Cir.1988), suggests that the Fourth Circuit construes the equitable power to deny enforcement more broadly than we, although it does so on the basis of our own *Continental Web* opinion. *Greensboro* is distinguishable, however, not only from *Continental Web* (a laches case), but also from this case. In *Greensboro* the Board had waited three years before seeking enforcement of its order and had offered no reason for the delay. Also, the court believed that the new charges were sufficiently different from the old ones to scotch the Board's claim that it was seeking enforcement of its old order in order to deal with a repeat violator. 843 F.2d at 798. And the Board apparently had failed to explain to the court *why* its practice is to wait to seek judicial enforcement until it has reason to believe that it is dealing with a repeat violator of the Act; this failure left the court with the impression that the Board was acting capriciously in seeking enforcement years after the order had been entered. The Board's practice, now that it has been explained, strikes us as sensible; and sensible or not, it does not offend the principles of equity. The order of February 5, 1987, will therefore be

ENFORCED.