NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0337n.06

No. 09-1829

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 02, 2010
LEONARD GREEN, Clerk

STEPHEN M. GLASSER, Regional Director of
the Seventh Region of the National Relations
Board, for and on behalf of the National Labor
Relations Board,

      Petitioner - Appellant,

v.

ADT SECURITY SERVICES, INC.,

      Respondent - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

Before: GIBBONS, SUTTON and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Stephen Glasser, Regional Director of the Seventh

Region of the National Relations Board (Director), appeals from the judgment of the district court

denying his petition for a temporary injunction under § 10(j) of the National Labor Relations Act

(NLRA). We reverse and remand.

**I.**

The underlying facts are not in dispute. ADT sells, installs and maintains alarm and security

systems for residential and business customers. It has offices throughout the United States and

Canada, and employs personnel to install, maintain and repair its alarm and security systems (service

techs). Service techs are supervised from regional offices but do not often report to those offices.

They drive company vans, which they park at home. They receive assignments from ADT's national

dispatch center in Rochester, New York, and leave from and return to their homes. To minimize travel time, service techs work almost entirely within the geographic region in which they live, although they occasionally work in neighboring areas on an as-needed basis. All service techs have roughly the same basic skills and training, and can perform their functions interchangeably.

ADT has a practice of entering into collective bargaining agreements on an office-by-office basis. The present dispute arises from the consolidation of its Kalamazoo and Grand Rapids, Michigan offices on June 2, 2008. At the time of the consolidation, Local 131, International Brotherhood of Electrical Workers, AFL-CIO (Union) was the designated exclusive collective-bargaining representative of the Kalmazoo service techs, as it had been for the previous twenty-nine years. The Kalmazoo unit consisted of fourteen service techs. The Grand Rapids office had twenty-seven service techs, who were not organized.

ADT announced the consolidation to Kalamazoo service techs on May 19, 2008. On the same day, ADT sent a letter to the Union stating that it was withdrawing recognition of Local 131 as bargaining agent for the Kalamazoo unit as of June 2, because the Union would not have the support of the majority of the service techs supervised out of the consolidated Grand Rapids office. The Union filed an unfair labor practice charge with the Board, challenging the withdrawal of recognition. After reviewing the charge, the Director issued an unfair labor practice complaint alleging that ADT had violated NLRA § 8(a)(1) and (5) by withdrawing recognition from the chosen

bargaining agent and unilaterally changing the conditions of employment without notice and bargaining.[1]

On December 30, 2008, the administrative law judge (ALJ) presiding over the administrative proceedings found that ADT had committed the unfair labor practices alleged. The ALJ determined that the Kalamazoo unit retained a separate identity and remained an appropriate bargaining unit due to its long bargaining history and the lack of change in the service techs' day-to-day functions. The ALJ issued a proposed order to remedy the unfair practices, which remains pending before the Board.

The Director filed a petition with the district court on March 12, 2009, seeking a temporary injunction under § 10(j) of the NLRA. The petition sought to compel ADT to recognize the Union, rescind the changes in overtime and travel pay, and, if requested by the Union, the changes in vacation eligibility, and to cease and desist from further unfair practices. ADT opposed the petition, claiming that it was entitled to withdraw recognition of the Union, and that the Director's theory was unprecedented and incorrect. After hearing oral argument, the district court entered a memorandum opinion and order on May 14, 2009, denying the Director's petition. The Director appeals.

---

[1]After the consolidation, the Kalamazoo service techs experienced relatively few changes. They continued to be paid less than service techs working in the Grand Rapids area. Initially, they were not required to report to Grand Rapids at all, and their supervisors traveled to Kalamazoo to distribute parts. The company did make changes to the manner in which overtime and travel pay were calculated and to the determination of vacation eligibility. Under the terms of their collective bargaining agreement, Kalamazoo service techs were paid overtime if they worked more than eight hours on one day and were compensated for travel time over thirty minutes. After consolidation, overtime was calculated by week, beginning at forty hours, and travel time was increased to forty-five minutes. Vacation eligibility became more generous.

**II.**

A.

The purpose of a § 10(j) injunction is "to give the Board a means of preserving the status quo pending completion of its regular procedures which might be ineffective if immediate relief cannot be granted." *Calatrello v. Automatic Sprinkler Corp. of Am.*, 55 F.3d 208, 214 (6th Cir. 1995) (internal quotation marks and citations omitted). "[S]ection 10(j) proceedings are merely ancillary to unfair labor practice proceedings to be conducted before the Board. . . . The district courts are *not* to adjudicate the merits of the unfair labor practice case. The question of whether a violation of the Act has been committed is a function reserved exclusively to the Board, subject to appellate court review of final Board orders." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir.1988) (emphasis in the original) (citing *Godfried v. Frankel*, 818 F.2d 485, 492 (6th Cir. 1987), and *Levine v. C & W Mining, Inc.*, 610 F.2d 432, 435 (6th Cir.1979)).

Sixth Circuit precedent establishes that before issuing a § 10(j) injunction, a district court must find that "(1) there is 'reasonable cause' to believe that unfair labor practices have occurred, and that (2) injunctive relief with respect to such practices would be 'just and proper.'" *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234 (6th Cir. 2003) (quoting *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 969 (6th Cir. 2001)).[2]

---

[2]Circuits differ over the proper standard to be applied to a § 10(j) petition, and specifically whether "reasonable cause," which appears in the NLRA at § 10(l) but not 10(j), should be part of the inquiry. In addition to this circuit, the Third, Fifth, Tenth, and Eleventh Circuits use the "reasonable cause/just and proper" approach. *See, e.g.*, *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1133-34 (10th Cir. 2000); *Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 247 (3d Cir.1998); *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 371 (11th Cir.1992); *Boire v. Pilot Freight Carriers, Inc.*,

No. 09-1829
*Glasser v. ADT Sec. Servs., Inc.*

*Ahearn* establishes as well that the director's obligation to show reasonable cause is a "relatively insubstantial" burden that "requires only that the Board's legal theory underlying the allegations of unfair labor practices be 'substantial and not frivolous' and that the facts of the case be consistent with the Board's legal theory." *Ahearn*, 351 F.3d at 237 (citations omitted). The "just and proper" inquiry "'turns primarily on whether a temporary injunction is necessary to protect the Board's remedial powers under the [NLRA].'" *Id.* at 239 (quoting *Schaub v. Detroit Newspapers Agency*, 154 F.3d 276, 279 (6th Cir. 1998)).

A district court's determination whether the Director's theory is substantial and not frivolous is a question of law, which this court reviews de novo; its determination whether the facts are consistent with the director's legal theory is reviewed for clear error. *Nixon Detroit Diesel,* 859 F.2d at 29. In making its factual determination, "the district judge need not resolve conflicting evidence between the parties." *W. Mich. Plumbing & Heating*, 250 F.3d at 969. The Eleventh Circuit,

515 F.2d 1185, 1188-89 (5th Cir.1975)

The Fourth, Seventh, Eight and Ninth Circuits have rejected the two-step approach and have adopted the traditional four-factor balancing test for injunctions. *See, e.g., Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 542 (4th Cir. 2009); *Sharp v. Parents in Cmty. Action, Inc.*, 172 F.3d 1034, 1038-39 (8th Cir.1999); *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456-60 (9th Cir.1994) (en banc); *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir. 1989).

The First and Second Circuits have adopted a hybrid approach, retaining the "reasonable cause" test and incorporating the traditional injunction factors into the "just and proper" determination. *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 365, 368 (2d Cir.2001); *Pye v. Sullivan Bros. Printers, Inc.*, 38 F.3d 58, 64 n.7 (1st Cir.1994) (noting that the "reasonable cause" test is "of questionable utility" but declining to address its applicability as it was not raised by either party).

In *Ahearn*, this court declined to adopt the traditional injunction test, noting that "the 'reasonable cause/just and proper' standard may only be overruled by this Court sitting *en banc* or the Supreme Court." 351 F.3d at 235 (citations omitted).

employing the same reasonable cause/just and proper analysis, explained that to satisfy its burden on the factual component of reasonable cause, "the Board must present enough evidence in support of its coherent legal theory to permit a rational factfinder, considering the evidence in the light most favorable to the Board, to rule in favor of the Board." *Arlook v. S. Lichtenberg & Co., Inc.* 952 F.2d 367, 371 (11th Cir. 1992). This standard is consistent with our precedent. *See, e.g.*, *W. Mich Plumbing & Heating*, 250 F.3d at 969 (stating that where reasonable cause is found by the district court, "so long as facts exist which could support the Board's theory of liability, the district court's [factual] findings cannot be clearly erroneous.").

In the instant case, the district court concluded that the Director had not shown reasonable cause to believe that an unfair labor practice had occurred; the court did not reach the issue whether an injunction would be just and proper.

B.

NLRA § 8(a)(5) makes it an unfair labor practice "for an employer . . . to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). In relocation and accretion cases, this has been held to prohibit the non-recognition of an incumbent union where the unit in question retains its separate identity and remains an appropriate bargaining unit following the employer's action. *See, e.g.*, *Armco Inc. v. N.L.R.B.*, 832 F.2d 357, 365 (6th Cir. 1987); *In re Comar Inc.*, 339 N.L.R.B. 903 (2003), *enf'd* 111 F. App'x 1, 2 (D.C. Cir. 2004) (table). After a merger, an employer has no duty to negotiate with a pre-merger bargaining unit that has become inappropriate. *See, e.g.*, *Border Steel Rolling Mills, Inc.*, 204 NLRB 814, 822, 1973 WL 4820

(1973).  However, if a pre-merger bargaining unit remains appropriate, the new employer must recognize it.  *See, e.g.*, *Cal. Pac. Med. Ctr. v. N.L.R.B.*, 87 F.3d 304 (9th Cir. 1996).

In determining whether a unit has retained a separate identity, the Board typically looks at a set of factors indicating a "community of interest" among the workers.  As this court noted in *Armco,* the factors include:

> (1) similarity in skills, interests, duties, and working conditions; (2) functional integration of the plant, including interchange and contact among the employees; (3) the employer's organizational and supervisory structure; (4) the bargaining history; and, (5) the extent of union organization among the employees.

832 F.2d at 362.

The *Armco* court also observed that where a unit has a lengthy bargaining history, "[t]his fact alone suggests the appropriateness of a separate bargaining unit." *Id.*  Similarly, the Board has found that "'compelling circumstances' are required to overcome the significance of bargaining history." *Fisher Broadcasting, Inc.*, 324 N.L.R.B. 256, 262 (1997) (quoting *Marion Power Shovel Co.*, 230 N.L.R.B. 576, 579 (1977)).

## C.

### 1.

In the instant case, the Director's legal theory in support of his § 10(j) petition was that the administrative consolidation of a unit with a twenty-nine-year bargaining history that results in no change in circumstances relevant to the other community-of-interest factors is not sufficient to destroy the unit's separate identity.  The Director contended that because the unit still functioned almost exactly as it had before its supervision was transferred to Grand Rapids, including that the

unit's members were paid less than the other Grand Rapids-supervised workers based on their geographical location, there were no compelling circumstances that would overcome the weight of the bargaining history. The Director reasoned that factors such as similarity in skills and plant integration, which may be significant in situations where workers from one plant are transferred to another, have little bearing where employees did not physically consolidate at one plant.

2.

The district court rejected the contention that bargaining history should be accorded significant weight, and instead performed its own analysis of the *Armco* factors. It found that factors one through three favored a single, consolidated unit, while factors four and five were neutral. The court proceeded to reject several other arguments made by the Director or contained in the ALJ's decision, before concluding that

> neither the Regional Director not the ALJ has considered the factors that even the Regional Director says must be considered. Instead, they have simply found that there was a long bargaining history for service techs who used to report to Kalamazoo. In the Court's judgment, this is not a "substantial and not frivolous justification requiring the continued recognition of [the Union] in light of the remaining community of interest factors.

*Glasser ex rel. N.L.R.B. v. ADT Sec. Servs., Inc.,* No. 1:09-CV-223, 2009 WL 1383291, at *6 (W.D. Mich. May 14, 2009).

**III.**

A.

The district court appears to have misconstrued the Director's legal theory. Although the Director does argue that the long bargaining history should be accorded significant weight, his legal

theory is not that this history makes consideration of other factors unnecessary. Rather, the Director asserts that this bargaining history is significant, and that other factors normally considered in evaluating community of interest are of less importance here because the unit experienced minimal change in the consolidation.[3]

As noted, bargaining history has been recognized as a strong indication of the appropriateness of a unit. *Armco*, 832 F.2d at 363. In addition to the language from *Armco* quoted above, the Director relies on decisions of the Board holding that where there has been a long bargaining history, compelling circumstances are required to overcome the significance of that history. *Fisher Broadcasting,* 324 N.L.R.B. 256, 262 (1997). In light of *Armco* and the Board's prior decisions,[4] the Director's legal theory is substantial and not frivolous.

The Director's legal theory must also find support in the facts. Here, the district court did not determine whether the Director's legal theory was sufficiently supported by the facts, but instead undertook its own analysis of the merits of the underlying unfair labor practice charge by applying the *Armco* factors as the court deemed appropriate. The district court analyzed each of the five *Armco* factors based on its own conclusions regarding which facts are relevant and how the

---

[3]At the hearing before the district court, counsel on behalf of the Director repeatedly emphasized that the Director's position was not that bargaining history alone gave the unit a separate identity. *See* R. 11, Oral Argument Regarding Preliminary Injunction, at 3, 7-8, 14-15.

[4] *See Cal. Pac. Med. Ctr. v. N.L.R.B.,* 87 F.3d 304 (9th Cir. 1996); *Gibbs & Cox, Inc*., 280 N.L.R.B 953, 954 (1986); *Marion Power Shovel Co.*, *supra; P.J. Dick Contracting*, 290 N.L.R.B. 150, 151 (1988) ("The Petitioner's alternative unit proposal of the 11 counties of the current MBA agreement is an appropriate unit. It is significant that the parties have bargained in this unit, albeit through a bargaining association, since 1979.").

9

balancing test should be applied to the facts. In doing so, the district court substituted its own legal theory for the Director's and measured the sufficiency of the factual support using the wrong yardstick. Our precedents foreclose this searching inquiry at this stage of the judicial and administrative process. *Nixon Detroit Diesel*, 859 F.2d at 28.

Properly viewed, the Director's legal theory is supported by the facts. It is undisputed that the Union has a twenty-nine year history of collectively bargaining on behalf of the Kalamazoo unit. It is also undisputed there has been virtually no change in the work performed by the Kalamazoo unit since the administrative consolidation. Although the Kalamazoo unit employees were consolidated under the management of ADT's Grand Rapids office, they continued to go directly to clients from their homes, work primarily near their homes, receive their assignments from ADT's national dispatch center in Rochester, New York, and have a separate on-call list. Unit employees are also still paid at a lower rate than their Grand Rapids counterparts. These facts support the Director's theory that the "consolidation" changed the location of the unit's supervision, but did not destroy the appropriateness or separate identity of the bargaining unit.

We therefore conclude that the Director met his "relatively insubstantial" burden to demonstrate reasonable cause.

### B.

The district court did not reach the issue whether an injunction would be just and proper. Although this inquiry is ordinarily "committed to the discretion of the trial judge," *Calatrello*, 55

10

No. 09-1829
*Glasser v. ADT Sec. Servs., Inc.*

F.3d at 214 (citing *Gottfried*, 818 F.2d at 493-94),[5] the Director urges this court to consider the issue on appeal and grant the injunction. However, we see no reason the district court should not make this determination, and remand for the court to do so. We express no opinion regarding whether the issuance of an injunction is just and proper.

We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

---

[5]Section 10(j) of the NLRA states:

> The Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall . . . have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

11