NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0346n.06

Nos. 21-2664/2690

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | July 27, 2023 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON MOTION FOR A PROTECTIVE |
| BANNUM, INC., and BANNUM PLACE OF | ) | RESTRAINING ORDER |
| SAGINAW, LLC, a single employer and/or | ) | |
| joint employers and/or a Parent Corporation, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**ORDER**

**Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.**

The court issued an order. NALBANDIAN, J. (pp. 7–9) delivered a separate concurring opinion.

**PER CURIAM.** We recently granted the National Labor Relation Board's application for enforcement of its order remedying the unfair labor practices of Bannum Place of Saginaw, LLC ("Bannum Saginaw"). The Board now petitions us for a temporary protective restraining order prohibiting Bannum Saginaw and its parent company, Bannum, Inc., from disposing of their assets until the entities deposit a security in a fiduciary account with the United States Treasury. Because we conclude that the relief the Board seeks is just and proper, we grant the Board's motion.

**I.**

Bannum Saginaw ran "a residential reentry center in Saginaw, Michigan." *Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518, 522 (6th Cir. 2022). In April 2021, the Board issued an order directing Bannum Saginaw to reinstate and make whole two employees whom it had fired. D. 38-2 (Ray Decl. ¶ 3) (6th Cir. June 6, 2023). We denied Bannum Saginaw's petition for review and granted the Board's application to enforce its order. *Bannum Place*, 41 F.4th at 530.

A dispute arose as to whether Bannum Saginaw and Bannum, Inc. were jointly and severally liable for the relief awarded in *Bannum Place* and as to the amount of relief owed. In March 2022, the Board issued an amended compliance specification alleging Bannum Saginaw and Bannum, Inc. "to be a Single Employer, and/or Joint Employers and/or a Parent Corporation."[1] D. 38-2 (Ray Decl. ¶ 5) (6th Cir. June 6, 2023). In October 2022, an administrative law judge found Bannum, Inc. jointly and severally liable with Bannum Saginaw and directed the entities to pay $112,476.53 in backpay plus other benefits and interest. *Id.* ¶ 10. Last month, the Board issued a supplemental decision and order adopting the administrative law judge's decision. D. 46-2 (Suppl. Order) (6th Cir. June 30, 2023). And most recently, the Board filed an application for enforcement of its supplemental order in this court. *See NLRB v. Bannum Place of Saginaw, LLC, et al.*, No. 23-1632 (6th Cir.). The Board contends that, accounting for the interest that has accrued since the administrative law judge's decision was issued, Bannum Saginaw and Bannum, Inc. owed $141,362.16 as of May 2023. D. 38-2 (Ray Decl. ¶ 13) (6th Cir. June 6, 2023).

The Board alleges that Bannum Saginaw and Bannum, Inc. have taken several actions that threaten its ability to obtain any relief should this court enforce the supplemental decision and

---

[1]The amended compliance specification was issued before we decided *Bannum Place* but was not before us at the time of that decision.

order.  At a July 2022 hearing before an administrative law judge, the Board learned that Bannum Saginaw had closed its facility and sold its assets.  *Id.* ¶ 7.  Subsequent investigation disclosed that "Bannum Saginaw had sold its real property in Saginaw, Michigan, in an unadvertised sale to a third party" and that "the property was sold just prior to the" July 2022 hearing.  *Id.* ¶ 8.  The Board also learned that Bannum, Inc. had sold its "real property in Wheeling, West Virginia, to a third party."  *Id.* ¶ 11.  And when the Board sought assurance that Bannum Saginaw and Bannum, Inc. would maintain sufficient assets to satisfy any final relief ordered by this court, the entities refused, claiming that Bannum, Inc. was "no longer in business, has ceased doing business, has no employees, and no assets."  D. 38-3 (Winston Decl., Att. 2 at 1) (6th Cir. June 6, 2023).  In fact, however, the Board "learned that Bannum, Inc. was actively engaged in a lawsuit against the United States in the Court of Federal Claims seeking over $390,000.00 for breach of contract" and thus had at least one asset in the form of that claim.  *Id.* (Winston Decl. ¶ 3).

## II.

The Board petitions us for a temporary protective restraining order requiring Bannum Saginaw and Bannum, Inc. to deposit a security of $141,362.16—the amount the Board contends the entities owed as of May 2023—in an escrow account with the United States Treasury.  *See* D. 38-4 (Proposed Protective Restraining Order) (6th Cir. June 6, 2023).  The Board seeks this relief under § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), which provides:

> The Board shall have power to petition any court of appeals of the United States . . . wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order[.]  Upon the filing of such petition, the court . . . shall have power to grant such temporary relief or restraining order as it deems just and proper[.]

This court has not addressed the showing the Board must make to receive temporary relief or a restraining order under § 10(e).  We have, however, addressed nearly identical statutory

language found in § 10(j) of the NLRA. Section 10(j), which applies "[p]rior to a final Board order to cease and desist from an unfair labor practice," *Int'l Union, UAW v. NLRB*, 449 F.2d 1046, 1050 (D.C. Cir. 1971) (per curiam), empowers a district court "to grant to the Board such temporary relief or restraining order as it deems just and proper," 29 U.S.C. § 160(j). We have held that district courts may order relief under § 10(j) when "(1) there is 'reasonable cause' to believe that unfair labor practices have occurred, and that (2) injunctive relief with respect to such practices would be 'just and proper.'" *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234 (6th Cir. 2003). Temporary relief or a restraining order is "just and proper," we have explained, when it is "reasonably necessary to preserve the ultimate remedial power of the Board[.]" *Id.* at 239 (quoting *Schaub v. Detroit Newspaper Agency,* 154 F.3d 276, 279 (6th Cir. 1998)).

Although we are not alone in using a reasonable cause/just and proper standard under § 10(j), several circuits take a different approach under that provision. *See Glasser ex rel. NLRB v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 485 n.2 (6th Cir. 2010) (surveying the circuit split). Several courts of appeals "have rejected the two-step approach and have adopted the traditional four-factor balancing test for injunctions." *Id.* Others "have adopted a hybrid approach, retaining the 'reasonable cause' test and incorporating the traditional injunction factors into the 'just and proper' determination." *Id.* We have rejected several requests to adopt these alternative standards, stating that the "'reasonable cause/just and proper' standard may only be overruled by this Court sitting *en banc* or the Supreme Court." *Ahearn*, 351 F.3d at 235; *see McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 343 (6th Cir. 2017); *Glasser*, 379 F. App'x at 485 n.2.

We need not decide in this case whether the reasonable cause/just and proper standard applies to petitions filed under § 10(e). Neither party has briefed the issue, and we hold that injunctive relief is proper irrespective of the standard used. *Cf. NLRB v. P\*I\*E Nationwide, Inc.*,

894 F.2d 887, 891 (7th Cir. 1990) (describing the question of whether § 10(j) requires a showing of irreparable harm as "largely, perhaps entirely, semantic"). To begin with, there is no question that there is reasonable cause to believe that Bannum Saginaw engaged in unfair labor practices. We resolved that issue in *Bannum Place*. *See* 41 F.4th at 530. Further, the relief the Board seeks is both reasonably necessary to preserve the Board's remedial power and is consistent with "the four-factor test employed by this Court in the context of other petitions for injunctions[.]" *Ahearn*, 351 F.3d at 234. The Board alleges that Bannum Saginaw and Bannum, Inc. have liquidated, dissipated, and hidden their assets, and that the entities' actions jeopardize the Board's ability to obtain the relief we enforced in *Bannum Place* and that the Board recently ordered in June 2023. Neither Bannum Saginaw nor Bannum, Inc. seriously disputes these allegations. Lastly, the relief the Board seeks in its proposed protective restraining order would allow Bannum Saginaw and Bannum, Inc. to continue to operate and meet their other legal and financial obligations while ensuring that sufficient funds are set aside to remedy Bannum Saginaw's unfair labor practices.

Bannum Saginaw and Bannum, Inc. jointly raise three counterarguments, each of which we reject. (We refer to Bannum Saginaw and Bannum, Inc. collectively as "Bannum" when discussing the entities' joint response.) First, Bannum argues that the Board's petition is premature both because the Board has not issued a final order resolving whether Bannum Saginaw and Bannum, Inc. are jointly and severally liable for Bannum Saginaw's unfair labor practices and because the Board has not asked this court to enforce a final Board order. After Bannum raised these arguments, however, the Board issued its supplemental decision and order adopting the administrative law judge's liability and damages findings, *see* D. 46-2 (Suppl. Order) (6th Cir. June 30, 2023), and the Board filed an application for enforcement of that final order in this court, *see NLRB v. Bannum Place of Saginaw, LLC, et al.*, No. 23-1632 (6th Cir.).

Second, Bannum argues that the Board has failed to cite any authority that would allow this court to restrain its assets. We find Bannum's argument unpersuasive. Bannum attempts to distinguish each of the cases cited by the Board in its briefing before this court, but does not cite any cases holding or even suggesting that we lack authority to enter the Board's proposed temporary protective restraining order. Bannum, moreover, fails to articulate any reason why a temporary protective restraining order of the kind the Board seeks here falls outside the capacious universe of "just and proper" relief that we are authorized to grant under § 10(e).

Third, Bannum asserts that the injunctive relief the Board seeks here is not just and proper because this is not an extraordinary case. Bannum points to the fact that its separate lawsuit against the United States, which the Board asserts Bannum failed to disclose when it denied that it held any assets, was filed in July 2015. According to Bannum, this demonstrates that the Board's current request for temporary relief is unduly delayed. Bannum further argues that it is not required to assure the Board that it will comply with the Board's orders when those orders are being litigated and have not been enforced. Neither of these points dissuades us from granting the Board's motion. The Board's motion arises out of the Board's belief that Bannum Saginaw and Bannum, Inc. are winding down and selling off their assets and that there is a realistic possibility that the entities will not set aside sufficient assets to remedy Bannum Saginaw's unfair labor practices. Bannum does not provide any reason to think that the Board's view of its conduct is mistaken, nor does it provide any assurance that it will meet its obligations. Under these circumstances, we conclude that restraining Bannum Saginaw's and Bannum, Inc.'s assets is both just and proper.

**IV.**

We grant the Board's motion for a temporary protective restraining order.

**NALBANDIAN, Circuit Judge, concurring.** I join the majority opinion in full and agree that the Board's proposed relief is appropriate here. I write separately only to address the standard that should apply in this case. As the majority opinion outlines, the parties fail to discuss in any depth the proper standard for § 10(e) petitions, and this Court has apparently never addressed the issue. As a result, we conclude that the Board would be entitled to its requested relief under any of the possible standards.

As the majority notes, there is a circuit split on what standard ought to apply for requests for temporary relief under § 10(j). *See Glasser ex rel. NLRB v. ADT Sec. Servs.*, 379 F. App'x 483, 485 n.2 (6th Cir. 2010) (collecting cases). Some courts, like ours, apply the two-part "reasonable cause/just and proper" test that the majority lays out, which is based, in part, on language from § 10(j) and from § 10(*l*).[1] Others apply the four-factor traditional injunction test, and still others apply a hybrid of the two approaches. *Id.*

Although the language in § 10(e) is like the language in §§ 10(j) and 10(*l*), the sections cover different situations. The latter provisions cover relief that is available to the Board *before* the Board has adjudicated the complaint. *See NLRB v. P\*I\*E\* Nationwide, Inc.*, 894 F.2d 887, 891 (7th Cir. 1990). Section 10(e) covers enforcement situations that *follow* unfair-labor-practices orders. *Id.* at 892.

---

[1] The "reasonable cause" language appears in § 10(*l*) but not in § 10(j). *Glasser*, 379 F. App'x at 485 n.2. "[J]ust and proper" appears in both of those sections and in § 10(e). 29 U.S.C. § 160(e), (j), (*l*). Section 10(j) gives the Board discretion to pursue interim relief against any unfair labor practice after it files a formal complaint but before adjudication. Section 10(*l*), like § 10(j), "*requires* the Board to seek a preliminary injunction whenever it has 'reasonable cause' to believe that any of a small number of specified violations (such as secondary boycotts and certain illegal picketing) has occurred." *Kinney v. Pioneer Press*, 881 F.2d 485, 488 (7th Cir. 1989). The Seventh Circuit distinguishes between § 10(j) and § 10(*l*) cases because of the lack of the "reasonable cause" language in § 10(j). *Id.* at 489.

The Seventh Circuit, which uses the four-factor test as applied to public agencies in § 10(j) cases, *Kinney v. Pioneer Press*, 881 F.2d 485, 491 (7th Cir. 1989), has suggested that "the standard for a section 10(j) injunction is more demanding than that governing a petition to enforce such an order under section 10(e), once the order is entered," *P\*I\*E Nationwide, Inc.*, 894 F.2d at 892. This perhaps reflects the general distinctions between permanent and preliminary injunctions.[2]

And the D.C. Circuit has suggested that § 10(e) relief is "more readily granted when the Board seeks to maintain the status quo." *Int'l Union, UAW v. NLRB*, 449 F.2d 1046, 1051 (D.C. Cir. 1971); *see id.* at 1051 n.29 ("Whatever the appropriate standard is under § 10(j), temporary relief may be granted under § 10(e) upon a showing that the Board is likely to succeed in enforcing its order, and that interim relief is necessary to achieve the remedial purposes of the Act."); *see also NLRB v. Beverage-Air Co.*, 391 F.2d 255, 256 (4th Cir. 1968) (per curiam) (granting § 10(e) relief when the "uncontroverted evidence establishes reasonable cause to believe the act has been violated and that the remedial purposes of the act will be frustrated unless relief pendente lite is granted").

---

[2] We have held that "[i]n general, the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that for a preliminary injunction the plaintiff must show a likelihood of success on the merits rather than actual success." *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (cleaned up). In other words, a party seeking a permanent injunction already has a court ruling in its favor, while one seeking a preliminary injunction must show that it is likely to win on the merits of its case.

So it may well be that § 10(e) cases are governed by a different standard than § 10(j) cases (and § 10(*l*) cases). In any event, as the majority lays out, the requested relief here, which seeks to preserve the status quo, is appropriate under the § 10(j) standard and is consistent with the four-factor equitable test. And since neither of the Respondents argues that the § 10(e) standard would be any more demanding than the reasonable cause/just-and-proper standard, I concur.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk