RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

M. KATHLEEN MCKINNEY, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,

  *Petitioner-Appellee,*

  *v.*

OZBURN-HESSEY LOGISTICS, LLC,

  *Respondent-Appellant.*

No. 15-5211

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:14-cv-02445—John Thomas Fowlkes Jr., District Judge.

Argued:  October 12, 2017

Decided and Filed:  November 9, 2017

Before:  SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Ben H. Bodzy, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Nashville, Tennessee, for Appellant.  Laura T. Vazquez, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Appellee.  **ON BRIEF:**  Ben H. Bodzy, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Nashville, Tennessee, for Appellant.  Laura T. Vazquez, Elinor L. Merberg, Jessica Rutter, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

SUHRHEINRICH, Circuit Judge.   This case is one in a long series of disputes between the National Labor Relations Board ("NLRB" or "Board") and Ozburn-Hessey Logistics ("OHL").   In this instance, OHL reassigned one employee—Jennifer Smith—and terminated another—Nate Jones.   M. Kathleen McKinney ("McKinney"), a Regional Director for the NLRB, filed an administrative complaint with the Board claiming that OHL took these employment actions due to an anti-union motive.   While that claim proceeded, McKinney sought and received temporary injunctive relief from a federal district court.   The injunction gave Smith her old job back and reinstated Jones.   We review the decision to grant the temporary injunction. With respect to Smith, we affirm the injunction.   With respect to Jones, we find no basis for injunctive relief and vacate the district court's decision and remand.

## I.    BACKGROUND

### A.  Factual History

OHL provides third-party logistics solutions to its customers.[1]   Its employees help to collect, pack, and ship products to consumers and retail establishments.   OHL employees are currently represented by the United Steelworkers Union ("Union").

The NLRB and OHL have a long and acrimonious history dating back to 2009 when OHL employees first began to unionize.   *See, e.g.*, *Hooks ex rel. NLRB v. Ozburn-Hessey Logistics, LLC*, 775 F. Supp. 2d 1029, 1035 (W.D. Tenn. Apr. 5, 2011) (enjoining OHL from continuing its anti-union coercion); *Ozburn-Hessey Logistics, LLC*, 362 N.L.R.B. 118 (2015) (ordering OHL to engage in collective bargaining after its refusal to do so); *Ozburn-Hessey Logistics, LLC*, 357 N.L.R.B. 1632 (2011) (detailing OHL's unfair labor practices); *Ozburn-Hessey Logistics, LLC*, 357 N.L.R.B. 1456 (2011) (same).   Suffice it to say, OHL has consistently tried to prevent unionization efforts, often through unlawful means.   Despite these obstacles, OHL employees successfully unionized on May 24, 2013.   On August 19, 2016, a

---

[1]OHL has since been acquired by and now operates under the title of GEODIS USA.

federal circuit court ordered OHL to begin the collective bargaining process. *Ozburn-Hessey Logistics, LLC*, 362 N.L.R.B. 118 (2015), *enforced mem.*, 833 F.3d 210 (D.C. Cir. 2016). This case is the next chapter in that story.

In June 2013, OHL reassigned Jennifer Smith to a new job. Smith was an active Union supporter who regularly discussed Union business with co-workers, distributed Union materials, tried to convince her co-workers to sign Union cards, and wore pro-Union apparel to work. Smith, who had been working at one of the Memphis OHL facilities for eight years as a less than trailerload auditor, was reassigned to the position of small parts picker. At OHL, an auditor is in charge of reviewing items packed onto pallets set to be shipped to its customers. This job typically involves inspecting the products, counting the items on the pallet, boxing up and repackaging any loose items, as well as sealing the boxes for shipment. In essence, the auditor is in charge of double-checking everything before it is sent out. A small parts picker, on the other hand, actually prepares the shipment by pulling all of the items from warehouse shelves. This job, which takes place away from the main gates of the warehouse where the temperature is much higher, requires Smith to move about the aisles pulling items according to barcodes scanned by an RF gun and transport them for packing. Job performance as a picker is measured by the speed an employee is able to move these items.

Nate Jones was fired in October 2013. Jones, a janitor for one of OHL's Memphis facilities, was less outspoken about the Union than was Smith. Jones discussed the Union with his pro-Union colleagues and, on at least one occasion, raised issues about the Union in a meeting with OHL management. Additionally, Jones was involved in an altercation between management and a pro-Union employee. The other employee, Jerry Smith, had been placing pro-Union literature in the breakroom when Phil Smith, an OHL manager, ordered him to stop. Jones witnessed this incident, and Phil Smith later called him into his office to discuss it. Jones told Phil Smith that the only thing he remembered from the altercation was Phil Smith "yelling and screaming" at Jerry Smith. Other than these limited incidents, Jones was apparently very quiet about his feelings towards unionization.

Before being fired, Jones had some problems with safety violations. In June 2013, he received a final written warning because he had been operating his forklift without a seatbelt.

This warning alerted Jones that he could be fired for another safety violation. In October of that year, OHL began investigating Jones for stepping away from his forklift while it was still running. He walked fifteen to twenty feet away from the forklift and remained away long enough for another employee to take the key out of the ignition without Jones noticing. This was against OHL safety policy. After an investigation into the incident, an OHL human resources manager recommended Jones's termination. Shortly after this recommendation, he was fired.

The Union reports that after June 2013, ten employees requested their Union cards back and interest in Union meetings dropped over the course of the next year.

**B. Procedural History**

On April 30, 2014, McKinney filed an administrative complaint against OHL, claiming that it had committed unfair labor practices in an attempt to stifle Union support. Section 10(j) of the National Labor Relations Act ("NLRA") authorizes the Board to seek temporary injunctive relief in federal court while an unfair labor practices complaint works its way through the NLRB adjudication process. 29 U.S.C. § 160(j) ("Section 10(j)"). On June 13, 2014, McKinney sought a temporary injunction under Section 10(j) that would return Smith to her old position and reinstate Jones. The district court for the Western District of Tennessee granted the injunction on November 20, 2014. *McKinney v. OHL*, No. 2:14-CV-02445, 2015 WL 480675 (W.D. Tenn. Jan. 29, 2015).

Meanwhile, McKinney's complaint continued to work its way through the NLRB's administrative process. On April 28, 2015, an administrative law judge ("ALJ") issued a decision rejecting the unfair labor practice complaints related to Smith and Jones. *See Ozburn-Hessey Logistics, LLC*, No. 15-CA-097046, 2015 WL 1928271 (N.L.R.B. Apr. 28, 2015). The ALJ held that Smith's reassignment was not adverse, as she was receiving the same pay and benefits and her new job was no more onerous than her previous one. *Id.* As to Jones, the ALJ found that he was fired by a human resources manager who did not know about any of his purported pro-Union activities, and thus, his firing could not have been for anti-Union reasons. *Id.* McKinney filed exceptions to these findings and the Board is currently reviewing the case.

Following the ALJ decision, OHL asked the district court to remove Smith and Jones from the injunction. The district court declined to do so. We review that decision and consider the ongoing propriety of the injunction.

## II. ANALYSIS

OHL raises two issues on appeal. First, it claims that the district court's injunction was invalid at the outset due to a jurisdictional deficiency. Second, it argues that the district court erred in declining to remove Smith and Jones from the injunction.

## A. Subject Matter Jurisdiction

During the lower court proceedings, OHL moved to dismiss this case under Rule 12(b)(1). It argued that the district court lacked subject matter jurisdiction because McKinney's administrative complaint—a jurisdictional prerequisite for Section 10(j) proceedings—was invalid. Specifically, OHL maintains that McKinney was unlawfully "appointed" to run the Memphis region by a Board later declared to have only two legitimate members, *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2574 (2014), one shy of a quorum, 29 U.S.C. § 153(b).

In reality, McKinney was not "appointed" to a new position. She was already serving as Regional Director for the New Orleans region and the Board decided to consolidate her region with the Memphis region, leaving McKinney in charge of both. *See* 77. Fed. Reg. 72886. OHL is correct that the Board authorizing this restructuring did not have a quorum. However, as the district court correctly recognized, the newly confirmed NLRB has since ratified the decision to consolidate the regions. *See* Minute of Board Action (July 18, 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-3302/7-18-14.pdf. Even assuming that this restructuring affected McKinney's ability to file a complaint against OHL—which we do not decide here—this subsequent ratification legitimizes her actions. *See, e.g., Wilkes-Barre Hosp. Co., LLC v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) (holding that a "properly constituted Board" can retroactively ratify the appointment and actions of a Regional Director selected by an invalid Board). Moreover, when McKinney filed her complaint against OHL on April 30, 2014, she did so while operating under the umbrella of the new Board that undisputedly meets the

quorum requirement. Thus, OHL can make no argument that McKinney lacked enforcement authority by virtue of a Board acting without a quorum.

For these reasons, the administrative complaint against OHL was valid, and the district court was correct to exercise jurisdiction over the Board's Section 10(j) petition.

## B. Section 10(j) Injunctions

While an unfair labor practice complaint is pending, the Board has the "power . . . to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief." 29 U.S.C. § 160(j). In order to grant Section 10(j) relief, the district court must first find that "there is 'reasonable cause' to believe that unfair labor practices have occurred." *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234 (6th Cir. 2003) (quoting *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 969 (6th Cir. 2001)). If a petitioner has established reasonable cause, "the court must determine whether injunctive relief is 'just and proper.'" *Schaub*, 250 F.3d at 969 (quoting *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988)).

The Board's burden in establishing reasonable cause is "relatively insubstantial." *Id.* (quoting *Fleischut*, 859 F.2d at 29). It "need not prove a violation of the NLRA nor even convince the district court of the validity of the [its] theory of liability; instead, [the Board] need only show that [its] legal 'theory is substantial and not frivolous.'" *Id.* (quoting *Fleischut*, 250 F.3d at 29). We review the district court's finding that the Board's theory is substantial *de novo* and we review the finding that there are facts consistent with the Board's legal theory for clear error. *Id.* "[S]o long as facts exist which could support the Board's theory of liability, the district court's findings cannot be clearly erroneous." *Id.* (citation omitted). A temporary injunction is just and proper where it is "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible." *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987). This determination is reviewed under an abuse of discretion standard. *Kobell for & on*

*Behalf of NLRB v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1409-10 (6th Cir. 1992) (citation omitted).

We also note the limited role that federal courts play in this process. "[S]ection 10(j) proceedings are merely ancillary to unfair labor practice proceedings to be conducted before the Board." *Fleischut*, 859 F.2d at 28 (citation omitted). Because federal district courts—and by extension, federal circuit courts—have a limited and deferential role in this process, we "are *not* to adjudicate the merits of the unfair labor practice case." *Id.* at 28. Moreover, the district court's role under Section 10(j) is to preserve the status quo until the "*completion* of [the Board's] regular procedures." *Kobell*, 965 F.2d at 1406 (emphasis added). The ALJ's decision here does not mark the completion of the Board's proceedings, and thus we are not compelled to defer to it. *See, e.g., Penello for & on Behalf of NLRB v. Int'l Longshoremen's Ass'n, Local 1248, AFL-CIO*, 455 F.2d 942, 943 (4th Cir. 1971) (per curiam) (holding that, despite the administrative trial examiner's recommended dismissal of unfair labor practice claims, "the matter is still pending before the Board and there is, therefore, no final agency action to warrant dissolution of the injunction").

### 1. Jennifer Smith

#### a. Reasonable Cause

First, the Board must present a legal theory supporting the notion that OHL acted unlawfully when it reassigned Smith. As the district court recognized, Section 8(a)(3) of the NLRA prohibits employers from coercing employees out of exercising their right to organize "by discrimination in regard to . . . any term or condition of employment." 29 U.S.C. § 158(a)(3). The Board alleges that Smith was reassigned to a more arduous job as a result of her pro-Union activities. This satisfies the substantial legal theory requirement.

The Board must also present sufficient facts to satisfy that theory. In order to make out a *prima facie* case of unfair labor practices under Section 8(a), the Board must satisfy the three components of the *Wright Line* test: "(1) the employee was engaged in protected activity; (2) . . . the employer knew of the employee's protected activity; and (3) . . . the employer acted

as it did on the basis of anti-union animus." *See FiveCAP, Inc. v. NLRB*, 294 F.3d 768, 777 (6th Cir. 2002) (discussing *Wright Line*, 251 N.L.R.B. 1083 (1980)).

The district court concluded that the Board had met this burden, finding that Smith was open about her "avid" Union support and that her reassignment to a more physically difficult job supported this claim. OHL disputes this finding, arguing that Smith's reassignment to small parts picker was not an adverse employment action, as the job was no more onerous than that of auditor. The ALJ agreed with OHL. *Ozburn-Hessey Logistics, LLC*, No. 15-CA-097046, 2015 WL 1928271 (N.L.R.B. Apr. 28, 2015).

To begin, the Board has presented sufficient evidence to support the theory that Smith's new job as picker is more physically demanding than her previous job. Unlike an auditor, a picker is required to quickly move around the hotter part of a warehouse collecting items for shipment. Auditors, on the other hand, are only tasked with double-checking shipments before they go out, and do so in the cooler parts of the warehouse. The evidence tends to show that, as compared to a picker, an auditor's job requires less movement and physical exertion, and is generally under less time pressure. This is particularly true for Smith, who is asthmatic. The lower court did not commit clear error in concluding that Smith's new job was more physically onerous than her previous one.

The Board also presented evidence to support all three components of the *Wright Line* test. First, Smith was an active and open Union supporter. She distributed pro-Union literature, encouraged other employees to join the Union, and wore pro-Union apparel to work. Further, OHL does not appear to dispute that it knew about these activities, nor could it—Smith has testified openly on behalf of the Union against OHL in three prior Board proceedings. As to the third prong of the *Wright Line* test—the causation prong—the Board may rely on circumstantial evidence. *See FiveCAP*, 294 F.3d at 777-78. Here, Smith was reassigned in June 2013, just one month after the final vote count certifying the Union as the employees' collective bargaining representative. Furthermore, Smith has been the target of OHL's anti-Union sentiment in the past. *See Ozburn-Hessey Logistics, LLC v. United Steelworkers Union*, 359 N.L.R.B. 1025, 1026 (2013) (case set aside in the wake of *Noel Canning*, but finding that OHL committed unfair labor practices against Smith). Finally, OHL's lengthy history of hostility towards the Union

supports the inference that OHL acted with anti-Union motive.  *FiveCAP*, 294 F.3d at 778 (listing a "company's expressed hostility towards unionization" as one factor in determining causation) (quoting *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995)).

For these reasons, the district court did not err in finding reasonable cause to support Section 10(j) relief with respect to Smith.  Having reached this conclusion, we must review the district court's decision that injunctive relief was just and proper.

### b.  Just and Proper

The district court held that a temporary injunction was just and proper because OHL's adverse employment actions after the Union vote could significantly weaken the Union.  Because there was evidence that interest in the Union had been "chilled" following the anti-Union actions—such as fewer employees attending Union meetings and employees requesting their Union cards back—the lower court held that injunctive relief was justified.

OHL argues that the drop in Union support was not the result of Smith's reassignment, but rather of other factors that tend to discourage employees from joining unions in the first place—such as having to pay dues.  As support, OHL maintains that Smith's reassignment came after the chilling evidence took place, thereby making it impossible that her reassignment caused the reduced Union enthusiasm.  It also argues that even if Smith's reassignment did dissuade employees from supporting the Union, the Board's delay in seeking injunctive relief has made it impossible to restore the status quo—a prerequisite for Section 10(j) relief.  *Gottfried*, 818 F.2d at 495.  The district court disagreed, finding that the Board's delay in seeking injunctive relief did not render the status quo unrestorable, as OHL was still able to return Smith and Jones to their old jobs.  In reaching that conclusion, the district court did not abuse its discretion.

First, Smith's reassignment took place in June 2013, well before much of the chilling evidence took place.  In fact, much of that chilling evidence came on the heels of Smith's reassignment.  In any event, that chilling is still ongoing, as Union support remains scarce.  Second, the injunction is just as necessary now as it was when the district court first entered it, if not more so.  A federal circuit court has ordered OHL to engage in collective bargaining with the Union, which it had been refusing to do.  *Ozburn-Hessey Logistics*, 362 N.L.R.B. 118 (2015),

*enforced mem.*, 833 F.3d 210 (D.C. Cir. 2016). In many ways, this is *the* critical moment for the Union. Removing the injunction with respect to Smith would likely result in her being reassigned as a picker. With Union support waning, the message that OHL would send by moving one of its most outspoken pro-Union employees to a more difficult job might undermine the Union's strength on the eve of its first collective bargaining opportunity. Maintaining the status quo (which the district court restored with this injunction) is thus arguably more necessary today. This is true notwithstanding any delay in seeking the injunction.

Further, the delay itself was not unreasonable. Less than a year passed between the conduct at issue and McKinney's administrative complaint, and she took less than two months to file this petition after bringing her complaint. The district court did not abuse its discretion in holding this to be a reasonable amount of time in between OHL's conduct, the administrative complaint, and the Section 10(j) petition. *See, e.g., Gottfried*, 818 F.2d at 495-96 (holding a six-month delay between issuance of the administrative complaint and the Section 10(j) petition to be insufficient to defeat the just and proper analysis). The caseload facing the NLRB as well as the amount of time it takes to develop a factual record to support an administrative complaint necessarily produces delay. Indeed, the availability of Section 10(j) relief is evidence of that—its purpose is to provide interim relief during the inevitably lengthy administrative process. Considering the original injunction in this case covered ten separate employees and numerous alleged unfair labor practices, we find no basis for concluding that the delay was unreasonable. Nor did that delay defeat our ability to restore Smith to her status quo—or, as is the case now, maintain it.

The district court did not rely on "clearly erroneous findings of fact" or use an "erroneous legal standard" in holding that injunctive relief was just and proper. *Kobell*, 965 F.2d at 1410 (quoting *Fleischut*, 859 F.2d at 30). Accordingly, the district court was correct to preserve the Section 10(j) injunction with respect to Smith.

**2. Nate Jones**

**a. Reasonable Cause**

As with Smith, the Board's legal theory supporting its claim for Jones's reinstatement is substantial.  Section 8(a)(3) provides that it is an unfair labor practice to discriminate "in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).  The Board claims that OHL fired Jones because he was a Union supporter.  This amounts to a substantial legal theory.

However, the district court's rationale behind granting Jones injunctive relief was much weaker.  In fact, in its order granting the Section 10(j) injunction, the district court entirely failed to explain the reasoning behind its decision to grant Jones relief.  *See McKinney v. Ozburn-Hessey Logistics, LLC*, No. 2:14-CV-02445, 2015 WL 480675 (W.D. Tenn. Jan. 29, 2015).  Further, in its order denying OHL an amendment removing Jones from the injunction, the district court simply restated the ALJ's findings—which concluded that Jones was *not* the victim of an unfair labor practice—and nonetheless found "no reason to further amend the 10(j) order." *McKinney v. Ozburn-Hessey Logistics, LLC*, No. 14-02445, at *9 (W.D. Tenn. 2017) (order denying indicative ruling).  The court's lack of reasoning as to these two conclusions is startling at first.  It becomes less startling, though, when considering the absence of facts in the record to support Jones's relief.

As noted, Jones received a final written warning for a safety infraction in June 2013.  This written warning indicated that "[a]ny further violations of any OHL policy will lead to additional discipline, up to and including termination."  Jones himself acknowledged that this final warning meant that he would likely be fired for another safety violation.  That being the case, it is no surprise that Jones was fired after walking away from his forklift without shutting it off.  Indeed, his absence was so prolonged that another employee was able to take the key without Jones noticing.  It was on this basis that Jones was fired.

We also find little in the record to support an inference that Jones's termination was motivated by anti-Union sentiment.  First, Jones can hardly be considered an enthusiastic Union supporter.  The Board presents three arguments to support its position that Jones was openly pro-

Union.  First, the Board suggests that OHL perceived Jones as pro-Union because he was seen discussing the Union with his pro-Union colleagues.  However, there is no evidence to suggest that these conversations caused Jones to become a Union supporter.  Indeed, as the ALJ found, there is no evidence in the record that Jones has even signed a Union card.  *Ozburn-Hessey Logistics, LLC*, No. 15-CA-097046, 2015 WL 1928271 (N.L.R.B. Apr. 28, 2015).  Second, the Board relies on the fact that Jones spoke about the Union during at least one meeting with OHL management.  In the meeting the Board relies on, though, Jones actually gave advice to management about how to *stop* the Union from forming by explaining that his previous employer squashed unionization by paying its employees a little more.  Finally, the Board states that OHL perceived Jones as pro-Union because he refused to support Phil Smith in his dispute with the pro-Union employee, Jerry Smith.  Again, the evidence here is not persuasive.  The record shows that Jones simply told Phil Smith that he did not remember the details of the dispute.  We see no reason to believe that this limited statement qualifies Jones as an outspoken Union supporter.  In short, the record and the Board's arguments do little to support a finding that Jones was engaged in protected activity or that OHL knew about those activities.

But even accepting the Board's interpretation of these events, there is simply nothing to indicate that, even if Jones *was* engaged in protected Union activity, he was fired *because* of that activity.  Jones was on notice—another safety mishap and he was likely to be fired.  When he walked away from his forklift for an extended period of time without shutting it off, in clear derogation of OHL's safety policy, he took the risk that he would lose his job.  Jones committed a serious safety infraction after receiving a warning that doing so could result in his termination. Nothing in the record suggests that he was fired for any other purpose.  For these reasons, we find that the district court committed clear error in upholding the injunctive relief with respect to Jones and we vacate the injunction as it applies to him.

We pause again to point out our limited and deferential role in this process.  It is true that Section 10(j) proceedings themselves are "subordinate" to the Board's administrative process, *see Schaub*, 250 F.3d at 969, and that we must not adjudicate those claims here, *see Fleischut*, 859 F.2d at 28.  However, our review is not without teeth.  The district court was presented with virtually no evidence to support the injunction as it relates to Jones and plenty of evidence that

Jones's termination was justified.  In such a clear-cut case, were we to blindly defer to the district court we would render the role of federal circuit courts in Section 10(j) proceedings purely ornamental.

## C.  Equitable Criteria

OHL asks this court to apply "traditional equitable criteria" to the just and proper analysis.  As the district court correctly recognized, this court has already rejected that argument. *See Ahearn*, 351 F.3d at 234-35 (applying the "reasonable cause/just and proper" standard and declining to alter or replace it with traditional equitable criteria).  We cannot alter that ruling absent an *en banc* decision or a Supreme Court holding.  *Id.* at 235.

## III.  CONCLUSION

With respect to Jennifer Smith, we **AFFIRM** the district court's decision to leave the temporary injunction in place.  However, as to Nate Jones, the lower court committed clear error in finding sufficient evidence to support the Board's Section 10(j) petition.  Therefore, we **VACATE** the district court's injunction as it relates to Jones.  The case is **REMANDED** for proceedings consistent with this opinion.