NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0430n.06

No. 22-6116

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>
ERIC TAYLOR, Regional Director of the Ninth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>
    Petitioner-Appellant,<br><br>
v.<br><br>
ADT, LLC,<br><br>
    Respondent-Appellee.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>

**FILED**<br>
Oct 10, 2023<br>
DEBORAH S. HUNT, Clerk

<br>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>

OPINION
</td>
</tr>
</table>

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. This case arises from efforts between ADT, LLC, a seller and servicer of residential and commercial electronic security systems, and Local No. 369 of the International Brotherhood of Electrical Workers, AFL-CIO (the Union), to negotiate a new collective bargaining agreement. Based upon ADT's actions during negotiations and its ultimate withdrawal of recognition of the Union, the Union charged ADT with unfair labor practices in violation of the National Labor Relations Act (NLRA). After investigating, the Regional Director for Region 9 of the National Labor Relations Board filed a complaint before an administrative law judge (ALJ). While administrative proceedings were pending, the Regional Director petitioned in federal district court for a temporary injunction pursuant to § 10(j) of the NLRA, 29 U.S.C. § 160(j), to preserve the status quo during the pendency of the Board proceedings. The district

court granted in part and denied in part the Regional Director's petition. The Regional Director now appeals. For the following reasons, we AFFIRM in part and VACATE in part.

I.

A.

ADT, LLC sells and services residential and commercial electronic security systems throughout the United States.[1] Since 1971, Local No. 369 of the International Brotherhood of Electrical Workers, AFL-CIO has represented a bargaining unit comprising certain employees at two ADT facilities in Louisville and Lexington, Kentucky. The most recent collective bargaining agreement (CBA) between ADT and the Union was in effect from October 15, 2018, to October 14, 2021.

On August 25, 2021, in anticipation of negotiations for a successor CBA, Union representative Edward Devine contacted ADT to request information relevant to the negotiations. On August 31, ADT's Director of Labor Relations, James Nixdorf, told Devine that he was working on a response to the information request. Devine followed up twice—in late September and early October—because he had not received any of the information he considered "necessary for negotiations," which had begun on September 29. On October 8, Nixdorf provided Devine with information partially responsive to his request. Devine did not follow up again on the outstanding requests, and ADT never provided the missing information.

During the bargaining sessions on September 29 and 30, Nixdorf proposed that ADT and the Union replace the established wage rate, known as Schedule A, with a new, performance-based

---

[1] We present the facts in the light most favorable to the Regional Director. *See Glasser v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 486 (6th Cir. 2010); *Fleischut v. Nixon Detroit Deisel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988) ("[T]he district court need not concern itself with resolving conflicting evidence if facts exist which could support the Board's theory of liability.").

pay plan. Although the performance-based plan promised higher wages, the Union opposed it because it introduced at-will employment, gave ADT more control over the rate of pay, and limited employee-grievance protections. ADT and the Union met again on October 12 to continue bargaining. At that time, Devine offered a proposal that continued Schedule A with wage increases of $3 per hour but also permitted the introduction of performance-based programs "in addition to the wages in . . . Schedule A." Nixdorf countered with a performance-based pay plan similar to his initial suggestion. Devine responded with a proposal similar to the one he had made earlier in the day, but with more modest wage increases and with a clarification that any performance-based program beyond what was required by Schedule A was not "subject to the grievance and arbitration provisions" of the CBA. Nixdorf then emailed Devine: "Based upon your last submission, I see know [sic] reason to adjust my last offer. In fact, it confirms everything I already believed. Please consider this a resubmission of our last offer." Half an hour later, Devine wrote to Nixdorf: "[W]e are still available to negotiate if you and your team are finished for the night we are available the rest of the week otherwise please sign and date the extension and provide a list of dates to finish negotiating." Devine attached a proposed agreement that would extend the existing CBA through November 30. ADT did not agree to the proposed extension, so the CBA expired as scheduled on October 14.

In mid-October, a disaffection petition began circulating among bargaining-unit employees. Through conversations with ADT managers, some employees learned about ADT's proposed performance-based pay plan, which they understood to include improved pay, bonuses, and more vacation time. The managers provided these employees with pamphlets detailing the performance-based pay plan and informed them that, for the plan to be adopted, they would have to circulate some paperwork—a disaffection petition—among their coworkers. One manager, Eric

Sanders, was particularly proactive in this respect. He informed an employee, Michael Covert, that there was an opportunity to "get a lot more benefits" if the employees ousted the Union. Sanders "persistent[ly]" told Covert that the new plan was "super beneficial," encouraged him "to advertise it" to coworkers, and provided him with a disaffection petition and instructions on how to "vote out the Union." Sanders continued to discuss the matter with Covert almost every other day, even after Covert told him he did not want to talk about it anymore.

ADT and the Union held what would prove to be their final bargaining session on October 26. Devine made a new wage proposal, which again maintained the Schedule A structure. Nixdorf countered with a modified performance-based pay plan. Devine countered again, remaining firm on the Schedule A structure. Devine also offered to limit a new agreement to just one year, instead of the usual three, but ADT was not open to a one-year deal. At that point, Marcus Rodriguez, an employee participating in the negotiations in his role as a Union steward, received a barrage of text messages from other employees stating that ADT had distributed the Union's recent wage proposal to them and expressing their frustration with what they considered to be weak demands by the Union. ADT did not counter, and negotiations concluded for the day without an agreement.

In early November, ADT received a disaffection petition with nineteen signatures, reflecting a majority of the thirty-four-member bargaining unit.[2] On November 8, a day before negotiations were to continue, ADT informed the Union that it was in possession of "conclusive, objective evidence" that the Union no longer "enjoy[ed] majority support amongst the Louisville/Lexington bargaining unit" and that ADT was therefore "withdrawing union

---

[2] Before the district court, the Regional Director contended that seven of these signatures were from non-bargaining-unit employees and that the petition therefore did not reflect a majority of the bargaining unit. However, the Regional Director does not press this issue on appeal, so we do not weigh in on it.

recognition at these locations effective immediately." The next day, ADT notified the Louisville and Lexington employees that it had withdrawn recognition of the Union.

ADT then proceeded to implement the performance-based pay plan that Nixdorf had proposed during negotiations. The new plan brought a variety of changes: employees' wages increased; they received bonuses and additional vacation time; their insurance plans changed; they were reclassified to at-will status; they were paid biweekly instead of weekly; sick days were rolled into general paid time off; and overtime pay was tied to weekly hours worked rather than daily hours worked.

B.

On November 12, 2021, and January 7, 2022, the Union filed administrative charges against ADT alleging, as relevant here, that ADT had unlawfully: assisted in and solicited a disaffection petition, withdrawn recognition of the Union, unilaterally implemented new terms and conditions of employment, refused to bargain in good faith, refused to provide information to the Union, and negotiated directly with employees. The Board's Regional Director concluded that there was "reasonable cause" to support the charges, and, on March 25, 2022, filed a consolidated administrative complaint before an ALJ.

In June 2022, the Regional Director also sought temporary injunctive relieve pursuant to § 10(j) of NLRA, 29 U.S.C. § 160(j). Among other things, the Regional Director asked the district court to order ADT to: recognize and bargain in good faith with the Union; provide outstanding information requested by the Union; cease promising employees improved terms of employment on condition that they oust the Union; cease assisting in and soliciting the decertification of the Union; cease bypassing the Union and negotiating directly with bargaining-unit employees; rescind, at the Union's request, the unilaterally implemented changes to the terms and conditions

of employment; notify employees of the district court's order by posting copies at its Louisville and Lexington facilities, distributing it electronically to employees, and reading it to employees at a mandatory meeting and in the presence of a Board agent; allow the Board reasonable access to its facility to monitor compliance with its posting requirement; and file with the district court a sworn affidavit certifying ADT's compliance with the order.

The district court granted in part and denied in part the Regional Director's petition for temporary injunctive relief. The district court began by observing that § 10(j) relief "should 'preserve the status quo until the completion of the Board's regular procedures.'" R. 15, District Court Order, PageID 2778 (quoting *McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 339 (6th Cir. 2017)). The court further explained that it was authorized to grant injunctive relief if the Regional Director demonstrated (1) that there was reasonable cause to believe that ADT had committed unfair labor practices and (2) that injunctive relief was just and proper. *See Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 969 (6th Cir. 2001). Applying the first prong, the court concluded that there was reasonable cause to believe that "the disaffection petition was tainted by ADT's coercive involvement in its circulation," that ADT unlawfully withdrew recognition of the Union based on a tainted disaffection petition, and that ADT unlawfully "dealt directly with employees by conditioning benefits and incentives upon ousting the Union." The court believed there was conflicting evidence on these issues, but it determined that evidence of ADT manager Sanders' improper communications with Covert was enough to carry the Regional Director's burden on these alleged violations. The court did not, however, find reasonable cause to believe that ADT had unlawfully refused to provide information. Nor did it find reasonable cause to believe that ADT had unlawfully implemented changes to the terms and conditions of

employment because it determined that the parties had reached a good-faith impasse in negotiations prior to ADT's unilateral action.

Applying the second prong, the court determined that it was just and proper to "enjoin[] and restrain[] [ADT] from engaging in the anti-union activities" and to order ADT to recognize the Union. R. 15, District Court Order, PageID 2795. So the district court granted the Regional Director's request for an injunction requiring ADT to recognize, bargain with, and provide outstanding information to the Union and to distribute physical or electronic copies of the court's order to ADT's employees. But the court declined to order ADT to post and read its order at its facilities or to certify compliance with the order because it believed that these measures would be "unnecessary and overly burdensome." *Id*. Finally, despite its earlier comment that ADT should be "restrained from engaging in" anti-Union activities, the court did not enter an order restraining ADT from such conduct.

The Regional Director timely appealed. The following day, the ALJ overseeing the administrative proceedings ruled in the Regional Director's favor in all respects relevant to this appeal and recommended granting essentially the same relief that the Regional Director seeks in these § 10(j) proceedings. However, the ALJ's decision has no independent force unless and until it becomes the order of the Board, *see Schaub*, 250 F.3d at 968; 29 U.S.C. § 160(c); 29 C.F.R. § 101.11(b), so the Regional Director continues to maintain an interest in securing interim relief in these § 10(j) proceedings.

## II.

### A.

Section 7 of the NLRA declares that employees "have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their

own choosing, and to engage in other concerted activities for the purpose of collective bargaining or mutual aid or protection." 29 U.S.C. § 157. Section 8, in turn, establishes that it is "an unfair labor practice for an employer" "to interfere with, restrain, or coerce employees in the exercise" of their § 7 rights or "to refuse to bargain collectively with the representatives" of the employees. *Id.* § 158(a)(1), (5).

The Board has primary responsibility for adjudicating charges of unfair labor practices, subject to judicial review in the federal courts of appeals. *See Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988). To preserve the Board's remedial powers during its often-lengthy administrative proceedings, Congress has authorized federal district courts to issue "such temporary relief or restraining order as [the court] deems just and proper." 29 U.S.C. § 160(j); *McKinney v. Starbucks Corp.*, 77 F.4th 391, 397 (6th Cir. 2023). The district court's role in determining whether to grant interim relief is limited: because § 10(j) proceedings "are merely ancillary to unfair labor practice proceedings to be conducted before the Board," a district court is "*not* to adjudicate the merits of the unfair labor practice case." *Fleischut*, 859 F.2d at 28; *see Ozburn-Hessey*, 875 F.3d at 339 (federal courts "have a limited and deferential role" in § 10(j) proceedings).

Our caselaw instructs district courts to consider two factors to determine whether interim relief is warranted. *Starbucks Corp.*, 77 F.4th at 397. In this respect, our court has taken the more lenient position in an entrenched three-way circuit split on the standard for § 10(j) relief. *See Glasser v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 485 n.2 (6th Cir. 2010) (noting that some circuits use the two-prong approach, others use the more demanding preliminary injunction framework , and still others use a hybrid approach); *Starbucks Corp.*, 77 F.4th at 410–11 (Readler, J., concurring) (suggesting that we "reconsider our approach"). In this circuit, the Regional

Director must demonstrate that (1) there is reasonable cause to believe that unfair labor practices have occurred and (2) injunctive relief is just and proper. *Id.* at 397 (Boggs, J., majority) (quoting *Ozburn-Hessey*, 875 F.3d at 339).

The "burden of establishing reasonable cause is 'relatively insubstantial.'" *Schaub*, 250 F.3d at 969 (quoting *Fleischut*, 859 F.2d at 29). The Regional Director "need not prove a violation of the [Act] nor even convince the district court of the validity of the Board's theory of liability; instead, [the Director] need only show that the Board's legal 'theory is substantial and not frivolous.'" *Id.* (quoting *Fleischut*, 859 F.2d at 29). The Regional Director "must also show that the facts of th[e] case are consistent with the Board's legal theory," *id.*, but the district court "may not resolve conflicting evidence or make credibility determinations," *Starbucks Corp.*, 77 F.4th at 397; *see also Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 237 (6th Cir. 2003) (noting that "fact-finding is inappropriate" in a § 10(j) proceeding). If reasonable cause exists, the district court must determine whether injunctive relief is "just and proper." *Starbucks Corp.*, 77 F.4th at 397. That standard is met when it is both "possible" and "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA." *Id.* (quoting *Ozburn-Hessey*, 875 F.3d at 339). "[T]he status quo is the state of affairs existing before the alleged unfair labor practices took place." *Id.* (quoting *Schaub*, 250 F.3d at 972).

We review a district court's reasonable-cause findings under a mixed standard. We review de novo whether the Board's legal theory is "substantial and not frivolous," but we review for clear error the question whether there are facts consistent with that legal theory. *Ozburn-Hessey*, 875 F.3d at 339. We review a district court's just-and-proper determination for abuse of discretion and

reverse only if the court relies on clearly erroneous facts or improperly applies the law. *Starbucks Corp.*, 77 F.4th at 397.

B.

The Regional Director takes issue with three aspects of the district court's order: (1) the denial of an injunction requiring ADT, at the Union's request, to rescind the changed terms and conditions of employment; (2) the finding that ADT did not unlawfully withhold information from the Union; and (3) the denial of an injunction ordering ADT to refrain from anti-Union activities, requiring additional steps by ADT to notify employees of the order, and directing ADT to certify compliance. We address each in turn.

1.

The district court concluded that ADT's unilateral implementation of the performance-based pay plan was lawful, so it declined to order ADT to rescind the newly implemented terms at the Union's option. At the heart of the district court's ruling was its finding that the Union and ADT had reached a good-faith impasse in negotiations. The Regional Director now challenges that finding.

a.

Section 8(a)(5) of the NLRA prohibits an employer from "refus[ing] to bargain collectively" with the employees' representative. 29 U.S.C. § 158(a)(5). An employer violates this provision if it "unilaterally changes existing terms or conditions of employment prior to bargaining to impasse." *FirstEnergy Generation, LLC v. NLRB*, 929 F.3d 321, 329 (6th Cir. 2019); *see NLRB v. Katz*, 369 U.S. 736, 743 (1962). If the parties have reached a true impasse, however, "an employer may lawfully make unilateral changes that are reasonably comprehended within [its] pre-impasse proposals and are consistent with the offers the Union has rejected." *FirstEnergy*,

929 F.3d at 329 (citations and internal quotation marks omitted). An impasse exists "after good-faith negotiations have exhausted the prospects of concluding an agreement." *United Paperworkers Int'l Union v. NLRB*, 981 F.2d 861, 866 (6th Cir. 1992) (emphasis omitted) (quoting *NLRB v. McClatchy Newspapers, Inc.*, 964 F.2d 1153, 1165 (D.C. Cir. 1992)). Determining whether an impasse has been reached requires a fact-intensive consideration of the parties' "bargaining history, the good faith of the parties in negotiations, the length of the negotiations, the importance of the issue or issues as to which there is disagreement, [and] the contemporaneous understanding of the parties as to the state of the negotiations." *NLRB v. Newcor Bay City Div. of Newcor, Inc.*, 219 F. App'x 390, 395 (6th Cir. 2007) (quoting *Taft Broad. Co.*, 163 N.L.R.B. 475, 478 (1967), *aff'd sub nom. Am. Fed'n of Television & Radio Artists v. NLRB*, 395 F.2d 622 (D.C. Cir. 1968)).

To begin, we note that "[t]he burden of establishing impasse is on the party asserting it." *Id.* (citing *Grinnell Fire Prot. Sys. Co. v. NLRB*, 236 F.3d 187, 196 (4th Cir. 2000)). That's "because impasse [i]s a defense to a charge of an unlawful unilateral change." *Area Trade Bindery Co.*, 352 N.L.R.B. 172, 176 (2008); *see also Monmouth Care Ctr. v. NLRB*, 672 F.3d 1085, 1089 (D.C. Cir. 2012) (characterizing impasse as an "affirmative defense"). But ADT did not raise an impasse defense in the administrative proceedings or before the district court, so the parties did not brief it. Yet the district court nonetheless found that the parties had reached a true impasse. Putting to one side the question whether it was proper for the district court to consider the impasse question *sua sponte*, the district court's finding cannot withstand review.

The district court rested its impasse determination entirely on one paragraph in the Regional Director's memorandum in support of the petition for preliminary injunctive relief. In

the court's view, this paragraph revealed that the Regional Director *agreed* that the parties were at an impasse:

> The union and respondent exchanged proposals, and included among respondent's initial proposal was one replacing . . . Schedule A—the wage progression scale— with a new performance-based pay plan . . . . Respondent proposed that pay under this plan would be at respondent's discretion and not subject to the grievance/arbitration process. The union opposed the plan on the basis that respondent would have unilateral control over employee wages. The union proposed including a pared down version of [respondent's performance-based plan] with Schedule A[;] however, respondent rejected that proposal. *Instead of continuing to negotiate with the union regarding the wage proposal, respondent's managers began dealing directly with unit employees by distributing the [performance-based plan] to those employees.*

R. 15, District Court Order, PageID 2791 (emphasis added) (quoting R. 1-1, Petitioner's Memorandum, PageID 18–19). But, accepted as true, this paragraph cannot support an impasse determination. Indeed, it undercuts any such finding because it claims that ADT refused to bargain in good faith and instead walked away from negotiations to deal directly with the employees. *See Dayton Newspapers, Inc. v. NLRB*, 402 F.3d 651, 661 (6th Cir. 2005) ("[E]mployers may not go directly to employees, who have not repudiated their union, and bargain with them on matters covered by the collective bargaining agreement."). So the district court did not provide a sound factual justification for its conclusion.

Looking beyond this paragraph, the district court could not properly have found that the evidence *conclusively* pointed to an exhaustion of good-faith negotiations. Rather, in context, the evidence could at least support the Regional Director's theory that ADT's unilateral alterations were unlawful. And, under our caselaw, that is all the Regional Director needed to establish. *Glasser*, 379 F. App'x at 486 (explaining that the Board satisfies its burden when it "present[s] enough evidence in support of its coherent legal theory to permit a rational factfinder, considering

the evidence in the light most favorable to the Board, to rule in favor of the Board" (quoting *Arlook v. S. Lichtenberg & Co., Inc.*, 952 F.3d 367, 371 (11th Cir. 1992))). Here, the parties had a decades-long bargaining relationship and had engaged in only four negotiating sessions during this round of bargaining. *Cf. Newcor, Inc.*, 219 F. App'x at 396 ("[T]hat there had been seven bargaining sessions does not lead to the conclusion that the parties had negotiated to impasse . . . ."). Though it rejected ADT's proposed changes, the Union offered possible avenues of compromise, such as a blended compensation plan or a one-year agreement. *See id.* (finding no impasse where "[t]he Union was continuing its efforts to develop a proposal to meet [the employer's] concerns"); *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 142 (2d Cir. 2013) (finding no impasse where "the Union was signaling a willingness to make concessions" or "compromise").

Yet, as the district court itself found, there was reasonable cause to believe that ADT was actively working to undermine the Union's support while negotiations were ongoing, thus casting doubt on ADT's good-faith participation in the negotiations. And ADT ultimately informed the Union that it was withdrawing recognition one day before negotiations were to continue; in fact, Devine noted in his response to Nixdorf's email that they were "scheduled to bargain tomorrow" and that he "look[ed] forward to hearing from [Nixdorf] then." This comment suggests that even at that point the Union did not "underst[and] negotiations to be at a standstill." *Hood River Distillers, Inc.*, 372 N.L.R.B No. 126, 2023 WL 5506927, at *4 (Aug. 24, 2023); *see Newcor, Inc.*, 219 F. App'x at 396 (noting evidence that "the parties were not at impasse because the Union was willing to continue negotiations"). In short, the evidence at least suggests that, had ADT not withdrawn recognition of the Union based on a tainted disaffection petition, the negotiations would have continued. And that set of facts would preclude a finding of a "valid, good-faith impasse."

*Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747, 762 (6th Cir. 2003) (emphasis omitted) (quoting *NLRB v. Brown-Graves Lumber Co.*, 949 F.2d 194, 198 (6th Cir. 1991)).

The district court may not have been wholly persuaded by the Regional Director's view of the facts, but that is beside the point. Under our caselaw, it was not the court's role to "resolve conflicting evidence or make credibility determinations." *Starbucks Corp.*, 77 F.4th at 397. By concluding that an impasse existed, the court went beyond the arguments of the parties and resolved factual issues *against* the Regional Director despite the presence of evidence consistent with the Regional Director's theory of liability. That was error. *See Glasser*, 379 F. App'x at 486. Under a proper understanding of the legal standard for impasse, we cannot say that the facts, taken in the light most favorable to the Board, were incompatible with the Regional Director's legal theory. *See id.* The district court therefore erred by finding a lack of reasonable cause to believe that ADT had committed an unfair labor practice by unilaterally altering the terms and conditions of employment.

b.

Having found that the Regional Director had not made the requisite reasonable-cause showing, the district court understandably did not address whether it would be just and proper to grant the requested relief. The Regional Director asks us to conduct our own just-and-proper analysis and order the requested injunction ourselves. But in this case, the determination of a just and proper remedial course is better left with the district court. *See id.* at 489 (explaining that "the issue whether an injunction would be just and proper" is "ordinarily 'committed to the discretion of the trial judge'" (quoting *Calatrello v. Automatic Sprinkler Corp. of Am.*, 55 F.3d 208, 214 (6th Cir. 1995))).

The Regional Director asks that we order an injunction requiring ADT to rescind any or all unilaterally implemented changes at the Union's request. Absent such an order, the Regional Director argues, the Union will be left in a weak bargaining position and will suffer a "predictable loss of employee support," making any eventual Board order ineffective. Appellant's Br. at 37; *see Frye v. Specialty Envelope, Inc.*, 10 F.3d 1221, 1226–27 (6th Cir. 1993) (per curiam) (an employer's unlawful conduct can "caus[e] the Union's member support to erode, and if this erosion continues, any forthcoming Board order to bargain will be a nullity"); *Harrell v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 558 (7th Cir. 2013) (a bargaining order unaccompanied by a rescission order may simply "put[] the Union in the position of needing to 'bargain back' [unilaterally implemented] conditions, thereby . . . forcing the Union to bargain for previously attained rights"). And, as the Regional Director observes, we have enforced Board orders to restore previous terms and conditions of employment in appropriate cases. *See, e.g.*, *DuPont Dow Elastomers, L.L.C.*, 332 N.L.R.B. 1071, 1076–77 (2000), *enf'd*, 296 F.3d 495 (6th Cir. 2002); *M. A. Harrison Mfg. Co., Inc.*, 253 N.L.R.B. 675, 688 (1980), *enf'd*, 682 F.2d 580 (6th Cir. 1982) (order), *and overruled on other grounds*, *Unbelievable, Inc.*, 318 N.L.R.B. 857 (1995); *see also NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 422 n.2, 431 (1967) (reversing the court of appeals and directing the court to enforce a Board order to "rescind any payment plan which [the employer] had unilaterally instituted"). Here, however, we will not direct a remedy ourselves.

It is significant that the Regional Director specifically seeks an order allowing the Union to demand rescission of "any or all" unilaterally implemented terms and conditions of employment. This means that the Union may "pick and choose" from the newly implemented terms, demanding rescission of changes unfavorable to employees while leaving in place the changes favorable to them. In appropriate cases, the Board has ordered such relief, and courts

have upheld it. *See, e.g.*, *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 311 (9th Cir. 1996); *Visiting Nurse Servs. of W. Mass. v. NLRB*, 177 F.3d 52, 61–62 (1st Cir. 1999); *CJC Holdings, Inc.*, 320 N.L.R.B. 1041, 1047 (1996), *enf'd*, 110 F.3d 794 (5th Cir. 1997) (per curiam). But when the Board enters an order, the remedy represents the conclusion of a full adversarial proceeding in which an employer has been found liable after an opportunity to contest the charges against it and to present its views regarding a remedy. *See* 29 U.S.C. § 160(b), (c); 29 C.F.R. § 101.12. That courts of appeals enforce Board-issued "pick and choose" orders in appropriate circumstances does not mean that this remedy is required as a matter of course, particularly in a preliminary § 10(j) proceeding. At this stage, the Regional Director has made no definitive showing of ADT's liability. Indeed, under our circuit's caselaw, the Regional Director needs to make only a minimal showing to obtain § 10(j) relief. *See Schaub*, 250 F.3d at 969 (explaining that the "burden of establishing reasonable cause is 'relatively insubstantial'" (quoting *Fleischut*, 859 F.2d at 29)). Because the Regional Director has not shown that the Board is entitled to an interim "pick and choose" rescission order as a matter of right, we decline to bypass the district court's discretionary function by directing that such an order be entered ourselves.

This is not to say that such relief is inappropriate at the § 10(j) stage in this or any other case. *See, e.g.*, *Norelli v. HTH Corp.*, 699 F. Supp. 2d 1176, 1207 (D. Haw. 2010), *aff'd sub. nom. Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011) (ordering employer to "immediately rescind, at the Union's request, any or all of the unilateral changes" that were likely implemented in violation of the NLRA); *Morio v. N. Am. Soccer League*, 632 F.2d 217, 218 (2d Cir. 1980) (per curiam) (affirming district court's § 10(j) order requiring the employer "to rescind, at [the Union's] option, any or all provisions of any current player contract," with some exceptions); *Perez v. Noah's Ark Processors, LLC*, 2019 WL 2076793, at *14 (D. Neb. May 10, 2019) (ordering

rescission of "any or all" unilateral changes at Union's request). We conclude only that the decision to enter such an order remains within the sound discretion of the district court. On remand, the district court will be able to consider the parties' arguments and determine what interim course is just and proper for preserving the possibility of an effective Board remedy.

In sum, we vacate the district court's order to the extent that it denied an injunction requiring ADT to rescind, at the Union's request, any or all unilateral changes to the terms and conditions of employment. We remand for the district court to determine whether interim relief would be just and proper and to fashion such relief as it deems appropriate, bearing in mind that § 10(j) exists to promote "speedy resolution to preserve the status quo." *HealthBridge*, 732 F.3d at 141 (citing *Muniz v. Hoffman*, 422 U.S. 454, 466–67 (1975)).

2.

The Regional Director next contends that the district court erred when it concluded that ADT had not unlawfully withheld information from the Union. The Regional Director states, however, that, despite this purported error, the court "properly ordered ADT to provide any outstanding information." Appellant's Br. at 32.

We decline to consider this challenge. As far as we can tell from the Regional Director's appellate brief and the district court's order, the court granted all the requested relief. *See* Appellee's Br. at 18 (noting that reversal of this finding would have "no practical impact on the Union's information requests" because the district court already directed ADT to provide outstanding information). And the district court's preliminary finding had no preclusive effect on the administrative proceedings. *See NLRB v. Ky. May Coal Co., Inc.*, 89 F.3d 1235, 1239–40 (6th Cir. 1996). In fact, the ALJ has since found for the Regional Director on this issue. The Regional Director simply disagrees with the court's reasoning. But we "review[] judgments, not statements

in opinions." *Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956). Because the Regional Director has suffered "no injury caused by the judgment," we will not review this aspect of the district court's reasoning. 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3902 (3d ed. Apr. 2023 update); *see also ASARCO, Inc. v. Sec'y of Lab.*, 206 F.3d 720, 722 (6th Cir. 2000) ("It is a well settled principle that a prevailing party cannot appeal an unfavorable aspect of a decision in its favor.").

3.

Finally, the Regional Director contends that the district court abused its discretion in failing to order ADT to: (1) refrain from engaging in anti-Union activities, including dealing directly with employees and promising employees better wages and benefits for ousting the Union; (2) post print copies of the order at its Louisville and Lexington facilities; (3) read the order to employees at a mandatory meeting and in the presence of a Board agent; and (4) return to the court a sworn affidavit certifying ADT's compliance with the order. The district court did not explain its decision not to enter a cease-and-desist order but declined to require the notice and certification measures on the ground that they were "unnecessary and overly burdensome." R. 15, District Court Order, PageID 2795. The Regional Director maintains that these are standard remedial measures in labor disputes and that we should order them on that ground.

We will not disturb the district court's decision not to require the notice and certification measures. Although reviewing courts may commonly approve such measures, *see, e.g.*, *UNF West, Inc. v. NLRB*, 844 F.3d 451, 463 (5th Cir. 2016); *United Nurses Assoc. of Cal. v. NLRB*, 871 F.3d 767, 788–89 (9th Cir. 2017), they are not required as a matter of course, *see Sysco Grand Rapids, LLC v. NLRB*, 825 F. App'x 348, 359–60 (6th Cir. 2020) (declining to enforce remedial orders requiring a public notice reading and Board access to facilities). The district court did not

abuse its discretion in declining to order these measures. The question before the court was whether such relief was just and proper—that is, whether this relief was "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers." *Ozburn-Hessey*, 875 F.3d at 339 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987)). And the court did require ADT to take steps to inform its employees of the court's order—by distributing electronic or physical copies of the order to the employees. It was within the bounds of the court's discretion to conclude that additional measures were not necessary to preserve the status quo.

With respect to the Regional Director's request for a cease-and-desist order, however, the district court's decision causes us some concern. The court expressly found that "ADT *should be enjoined and restrained* from engaging in the anti-union practices that gave rise to the Board's petition," but the court did not enter an order specifically restraining any unlawful activities. R. 15, District Court Order, PageID 2795 (emphasis added). Without some explanation from the district court, we cannot know why it ultimately declined to issue relief that it seemed to say was necessary. On remand, therefore, the district court should reconsider its refusal to issue the cease-and-desist order sought by the Regional Director and provide an appropriate justification for its ultimate decision.

* * *

We VACATE the judgment of the district court to the extent that it denied the Regional Director's requests for a cease-and-desist order and for an order requiring ADT to rescind, at the Union's request, any or all unilateral alterations to the terms and conditions of employment. We REMAND for the court to reconsider those aspects of its order consistent with the reasoning in this opinion. We AFFIRM the judgment of the district court to the extent that it denied the

-19-

Regional Director's request for an order requiring additional notice measures and certification of compliance by ADT.